20-5 Good morning, your honors. May it please the court. I'm Carrie Jeebuck with the law firm of Arnold and Porter here on behalf of Petitioner Willard Cruz. In this case, BIA committed multiple legal errors when it vacated the immigration judge's decision granting Mr. Cruz cancellation of removal. In its comprehensive decision based on an extensive record of over 900 pages of material, the immigration judge found that Mr. Cruz met his burden of proof on the eligibility requirements and that he merited a favorable discretion exercise of discretion on his request for cancellation of removal. In making that determination, the immigration judge considered the entire record and balanced the numerous positive factors and adverse factors considering the totality of the evidence and found particularly compelling facts meriting cancellation of removal. As we have explained in our brief, in reviewing the immigration judge's decision, the BIA violated its own regulations and this court's precedent by first reversing factual findings without explaining why the immigration judge's fact findings were clearly erroneous and by applying the wrong legal standards, second by making its own fact findings, and third by mischaracterizing the record. These were errors of law that this court undeniably has jurisdiction to review and should vacate and remand the BIA's determination. First point, the BIA erred in applying the De Novo standard of review when it reversed the immigration judge's findings of fact concerning Mr. Cruz's conviction for reckless assault of a child and conducted its own fact findings to support its vacator of the immigration judge's decision. Pursuant to applicable regulations, the BIA is prohibited from engaging in De Novo review of findings of fact determined by an immigration judge. Facts determined by an immigration judge are to be reviewed only to determine whether the findings are clearly erroneous. Fact findings are not to be overturned simply because the BIA would avoid the evidence differently or decided the facts differently had it been the fact finder. This court's decision... Judge Parker, do you have any questions? Not at this point, no. Judge Manasci. Yeah, I do. I mean, so we can only review the BIA decision, we can only review constitutional questions and questions of law, right? We don't dispute that. And we said that a petitioner can't use the rhetoric of a constitutional claim or question of law to disguise a quarrel about fact finding or the exercise of discretion. And so that seems to me... So I guess my question is when you are saying the real reason that the BIA disagreed with the IJ is because they looked at the facts differently, and the question of law that you're identifying that would be the premise for exercising jurisdiction is that they looked at those facts under the wrong legal standard. Isn't that just a way to get around the limitation that you need to identify a legal error as opposed to a difference in the way that the BIA balanced the facts in this case? I mean, why is the standard by which you've considered the facts sufficient to get around the jurisdictional bar? Well, we don't believe that that is what's occurring in what the BIA did here. We don't believe that the BIA's decision can fairly be read to say that they just view the facts differently. In this case, the BIA specifically reversed three facts that come to mind immediately that the immigration judge found without a clear explanation as to why they were doing that. So, I mean, we can talk about what those facts are, which I actually also want to talk about. But before we get there, I mean, you're saying that the essential difference between the BIA's decision and the IJ's decision was a difference in the way they saw the factual record. It wasn't that the BIA applied a rule of law that denied your client relief. No, I don't think we agree with that characterization, Your Honor. I think the way we look at this case is that there are- So, what is the question of law that you're asking us to review in terms of the BIA decision? What's the legal question that entitles your client to relief? Thank you. So, the legal question is whether in reviewing the record before the immigration judge and the immigration judge's decision, the BIA applied the right standard of review. And our position is that the BIA, and frankly, the position of this court and the regulations governing the BIA, are that the BIA cannot reverse findings to facts without finding clear error. And they can't just re-weigh the facts differently if they believe that  All right. So, you're saying what entitles you to relief is that the facts were properly weighed by the IJ and improperly by the BIA. And you're saying the legal error was the standard under which it reviews the facts, right? Well, it's the standard under which it reviews the facts, but also the way in which it cherry-picked and disregarded significant components of the record merely to get- I understand, but when you come in and you say that the problem with the BIA's decision is that they cherry-picked facts, I mean, why isn't that a factual dispute, a factual question? It sounds like it's an obviously factual question, doesn't it? It's not solely a matter of cherry-picking. It is a matter of the immigration judge finding one set of facts and the BIA referencing a different set of facts without a clear explanation as to why they- But are they a different set of facts? You don't disagree that the BIA is allowed to weigh the facts differently than the IJ, right? I mean, that's what an exercise of discretion is. It's like, well, I would give more weight to these considerations as opposed to- like, the BIA is allowed to do that. Provided the BIA is taking a full account of the record and all the findings of facts in front of it, we don't perceive that they're allowed to weigh facts. This is just low- You would think- If you point out to me- I'm sorry, but would you point out to me where in the BIA's decision, which I have in front of me, it says that we disagree with a fact-finding as opposed to we disagree with the way in which the IJ balanced the equities versus the adverse factors? So, we would point- Point me to a part. Go ahead. Yeah. So, I'm looking at special appendix page 11, which is page 2 of the BIA's decision. And in the top paragraph, the BIA does two things. One, in considering- The one that's actually the most troubling conviction? Yes. Yes. So, with respect to discussion of the conviction for reckless assault of a child, the BIA does two things. First, it disregards and makes a contrary determination as to the severity of the injuries to the child in question. So, whereas- When you say disregards, where does it- point me to the language where it says something contrary. So, the- That the IJ found. Sure. In the middle of the paragraph, the BIA notes that the immigration judge found that the infant's ability to recover from the injury and its continued health rendered the crime less serious. We disagree. A victim's ability to physically recover from a crime did not necessarily render the crime itself less atrocious in the discretionary context. The infant's recovery was fortuitous. And our issue with that characterization of the record and that statement is that the immigration judge's determination as to the seriousness of the trauma to the child and how to evaluate that in the context of the criminal conviction was based on over 600 pages of medical records and the- I think you agree with me. You agreed a moment ago that the BIA is allowed to weigh the facts differently. And so, an exercise of discretion, a discretionary release like this would necessarily be in the nature of, well, he did commit a crime. The IJ thought it wasn't that serious and so would be outweighed by other positive factors. And we, the BIA, in reconsidering that think that actually it was more serious than the IJ thought it was. And we don't think it's outweighed by the positive factors. That seems to be a balancing and weighing of evidence in order to decide whether to exercise discretion. I mean, isn't that what the BIA is doing here? And if we said that the IJ's characterization of something is more or less serious and therefore entitled to more or less weight, wouldn't that essentially mean the BIA would not be allowed to balance the equities differently and come to a different discretionary decision, which we know that they are allowed to do that. Well, I don't agree with that, Your Honor, from the perspective that the medical expert opinion in the case concluded that the recovery of the child from the trauma was as it was because the trauma was not severe. And so when the BIA looks at this record and says, the language of the statute says the criminal offense of which this, you know, this petitioner has been convicted requires serious injury to the brain of the child. But these are not different facts from the IJ, because these are not different facts from the IJ considered, right? So the IJ acknowledges that Mr. Cruz was convicted of an offense, which requires a finding of a serious physical injury. But the IJ thought, well, if I look at the facts of what happened there, I don't think it was as serious a violation. And the BIA says, oh, well, we also see that there was a conviction for this offense. So we understand the IJ's position that given the circumstances, it wasn't that serious. But we put more weight on the conviction than on the individual circumstances. But they're not operating in a universe of two different sets of facts. They're just balancing them differently. Why is that not right? Frankly, I don't think that's clear from the BIA's decision in that you have a medical... Actually, before you explain that, can I ask if it is the way I just described it, that would be permissible. And you're just saying it's not what the BIA did. Is that right? Our position is here, the BIA is not actually just viewing the weight of the conviction differently. The BIA is disregarding significant evidence as to the medical condition of the child and the circumstances surrounding Mr. Cruz's application. And your position is that was some sort of de novo review? Yes, Your Honor. What are the other factual findings that you think were improperly overturned? So before the immigration judge, the question of Mr. Cruz's credibility concerning the events underlying the conviction for reckless assault of a child were squarely in front of the immigration judge. He did look at all of the police records, all of the medical records, medical expert opinion, and he had the testimony of Mr. Cruz himself. And so where Mr. Cruz had an issue of some inconsistencies between two separate statements to the police, the immigration judge heard testimony concerning Mr. Cruz's explanation for those inconsistencies, found them to be minor, found Mr. Cruz to be forthcoming, found him to be testifying with remorse, both as to his traffic-related convictions and as to the conviction for reckless assault of a child, and overall declined to determine an adverse credibility determination as to Mr. Cruz. When you look at what the BIA has done, they immediately point to inconsistent accounts of what occurred from Mr. Cruz without any consideration of the fact that those inconsistencies in front of the trial judge, the immigration judge, were found to be minor. And so we understand that reference to be an impugning of Mr. Cruz's credibility and certainly a suggestion of poor character that is not... I'm also looking at the BIA decision. Where does the BIA differ? Can I just ask what you're referring to in the BIA opinion where the BIA disregards his credibility determination? Sure. Right. So I would look at, in the same paragraph we were discussing earlier, the BIA notes the respondent gave inconsistent accounts of what occurred, stating at one point he may have picked the infant up too hard and then later admitting that he shook the child. And those are precisely... I mean, the IJ didn't deny that he did give inconsistent accounts. You're just saying the IJ said that under the circumstances, I don't think those inconsistent accounts warrant an adverse credibility finding or a strong negative factor. But there's no dispute between the IJ or the BIA that there were inconsistent accounts, right? Right. In that sense. But the IJ also said that Mr. Cruz testified, was forthcoming in his testimony, showed remorse, and explained those inconsistencies to the adequacy of the court. So in a circumstance where that's the factual record, and the only statement about that from the BIA is noting inconsistent statements without actually taking into account the remainder of the record, we feel that that is a fairly transparent finding. Cassie, maybe this is a more abstract question, but what is the factual finding? When you're talking about reviewing the IJ's facts, I mean, so the IJ acknowledged the fact that there were inconsistent accounts, and then the IJ's analysis was, well, under the circumstances, they can be explained. Is that piece of the IJ analysis, that's a factual finding about whether it's adequate, whether the inconsistencies are adequately explained? That's a fact that the BIA can't reconsider? It seems to me the facts are inconsistencies, and whether there's an adequate explanation for it is, you know, whether it's discretion or it's a legal analysis. It's something different than the underlying facts. Is that not right? Well, that is a credibility determination that's being made by the immigration judge based on the record in front of them. And, you know, it's pretty clear law that the BIA cannot make its own credibility determinations, and we think that the way the BIA is handling that particular statement of inconsistencies in the record, and then proceeding to lump it in the category of severe adverse factors, they are commenting on, even if not directly, the transparency and credibility of Mr. Cruz. They are impugning his credibility. Let me ask you this. Chris Parker. Yes. What is it you would have us do? Specifically, what relief are you seeking? The relief we're seeking is to vacate the BIA's determination remand for further proceedings. And those proceedings would be what? Would be for the BIA to provide a more thorough record of why exactly it comes out differently on the basis of such a thorough record presented by the immigration judge that's treated so lightly by the BIA. Well, you're, you're, you're, what you're saying is that you want this to go back for a re-division of the BIA, and, I'm sorry, go ahead. There's a lot of back, there's a lot of background noise. Sounds like wind. I was going to note that Mr. Parker, Judge Parker's comment was broken up, so if he could repeat, please. Yeah, I'm, I'm, I'm, I'm still a little bit clear about exactly what, let's say we agreed with you, but what would the, you know, decretal language in our writing say? That they're going, that they should just go back and, what, improve their opinion, or redo their opinion, or, or what? I, I think we're asking for the BIA. Specifically, what, specifically, you know, we, we, lots of times we see opinions from the courts below that we are reviewing that are, you know, not pluperfect, and, and this may fall into that category, but are you, I, I, I'm unclear about what you would have us say to the BIA. Just do a better job on, do a better job on your opinion, or what? We're asking for the BIA to provide clear explanations, and in this case in particular, a clear explanation taking into account the legality of the record before it, and before the immigration judge, as to the basis for coming out so differently than the immigration judge. In this case, we believe they've done so because they've decided to make their own factual determination contrary to the immigration judge's record, and that's impermissible without demonstrating clear error review, something they haven't done here. Very difficult to look at the medical record as to the severity of the injuries to the child, and think that the BIA is in concert with what the medical record is. It's also very difficult. Yes. You've reserved one minute for rebuttal. Before I forget, though, you and your law firm, Arnold Porter, are representing Mr. Cruz on a pro bono basis, is that correct? Yes, Your Honor. And is that part of our pro bono panel, or is that just a separate pro bono program? It's our separate relationship with Brooklyn Defender Services, who serves as co-counsel to Mr. Cruz. Okay. Well, I thank you for doing this. We'll hear from Mr. Pennington. Thank you, Judge, and good morning. Greg Pennington for the Attorney General. So, the board reviews any discretionary determination from the immigration judge, de novo. It owes no deference to the ultimate discretionary decision, and it doesn't have to find clear error in the judge's findings in order to reach that decision. Because what the board did here is relied explicitly on the immigration judge's findings, and just shuffled around those That's a purely discretionary decision, which the court has recognized it lacks jurisdiction to consider. So, I'll briefly address the two points that were raised in the opening argument about the legal issues that the court has jurisdiction to review. And the first one you mentioned was... Before you do that, Judge Parker, before you do that, can you help me assure myself that I'm familiar with the background of this case? Now, he's been in the country... He entered the country when? I believe in the 90s, mid to late 90s. So, he's been in the country, what, 20 years? Yes, Judge. And the incident involving the trial happened when? In 2012. And he was picked up when? By immigration, he was picked up. So, after he was sentenced on the conviction for shaking this was picked up for a forged inspection sticker on his car. And I think that's when he was released on that, because he was on probation while he committed that forged inspection sticker offense. He was resentenced to a year on the reckless assault conviction. Once he completed that year in the New York penal system, then immigration picked him up. And what year was that? He was arrested in 2016 for this forged sticker. So, I'm guessing 2017 to 2018. So, he spent, what, three years in jail for all of this? Give or take. He had, I think the immigration judge found six additional infractions. He was sentenced anywhere from 30 days to 60 days for those. So, I would say a ballpark sentence. Two to three years in between his state sentences and his immigration detention. Okay. So, I looked at his disposition sheets, and it's a little bit confusing. What were all these traffic violations that he accumulated? Does the record clearly reflect that? Yeah. I believe most of them were he was driving without a license. So, he had his license suspended for failure to pay tickets, and he just never corrected that. So, he just kept driving on the suspended license, and he kept getting arrested and convicted and sentenced for roughly 30 days on those offenses. And was he employed at all? There was a period of disability or something, wasn't there? He was in an auto accident? That's correct. So, I think that he had limited employment between 2010 and at the time of this removal proceeding. I don't think there was anything steady. Before that, before his accident, he had worked in the fast food industry. Right. And he lived out in Suffolk County, right? I believe so. So, that explains why he was using a car rather than public transportation, right? That would be one explanation, yeah. The charge involving the, I think, the formal charge was falsification of an official record. Was that one? That sounds right. Yeah, he testified that it was an inspection sticker. He couldn't afford to have his car up to par so it would pass inspection. So, he used a fake inspection sticker. And then, ultimately, he applied for writ of habeas corpus, right? To get himself out of jail. Yes. And the SBNY did order a bond hearing for him. And he has been at liberty since. And now he's going, the government proposed to send him back to Bolivia where he had lived for 20 years. That's correct. Okay. Thank you. This has been very helpful. So, where I was leaving off was the severity of the injury. You know, a lot's been said about the board citing the statute of conviction in its decision. And that was well-developed in the factual record. He was originally charged as removable from the United States for several different grounds of removability based on this and the he admitted that he was convicted of this crime and that it was a crime of child abuse that made him removable. And then, the government attorney during the removal hearing read the statute of conviction into the record to him trying to figure out how the infant suffered this serious injury that is required under the statute. And the immigration judge found that he was convicted of this statute inside of the language of the statute. So, any allegation that the board pulled this statute of conviction out of its hat and made a finding of fact in the first... No, there's no question that he was convicted of that particular offense, but didn't the... Subsequently, were very detailed medical records, which I've taken a look at, which seemed to me to call into question the severity of the incident. For example, the doctor determined that the kid didn't have any lingering effects from it. And also, concluded based on his observation that the hematoma was bilateral, which I think Cruz's counsel argued the IJ seemed to accept that kind of injury could not have resulted from shaking. So, what are we to do with that? Are we to let the IJ to reach conclusions about the severity of the injury? I mean, what if anything? Well, the crux of the argument is the court can't do anything because it doesn't have jurisdiction to get into this. So, what the immigration judge found was that Mr. Cruz shook the child, but that in his balance, because the child is healthy today and because he recovered quickly, that he found the crime less severe. And then if you look at the board's decision, they say the same thing. They cite the immigration judge's findings of fact that Mr. Cruz shook the infant. They noted that he served a year of sentence. And they just disagreed that the wouldn't even be having this discussion if he didn't shake the infant in the first place. And I give the court another hypothetical where maybe someone is convicted of robbery by force, where they use a firearm and shoot somebody. And an immigration judge says, well, you know, the bullet just grazed his arm. So, we think it's less serious. And then the board, they could view that in a different light and say, this is still a serious crime. And we don't believe that the is necessarily dispositive. And the board is allowed to do that. It's given de novo review to do that. So... Right. So, it has nothing to do with the relaying of the evidence. Could you help me just sort of sort out how the jurisdictional bar works here? So, we have jurisdiction to review questions of law and constitutional claims. We do not review factual questions or matters of discretion. Here, the analysis is a matter of discretion because you're deciding whether to grant discretion or relief. It's based on facts. But the facts are evaluated pursuant to certain legal standards. So, would it be enough to get around the jurisdictional bar if we thought that the BIA didn't comply with the right legal standard when it evaluated the facts? So, yes, this court... So, the first step is the court is barred from reviewing any judgment regarding the granting of or denying of cancellation of removal. So, that's the bar. And then a petitioner must come forward with a colorable constitutional claim or a question of law. And this court has held that if the board applies the wrong standard of review, for instance, then that might be a legal question which the court could review and send it back. But Mr. Cruz just hasn't given us a colorable legal question. He really takes issue with ultimate discretionary determination. And no matter how much he dresses it up to say that the board engaged in improper fact-finding, there really isn't any indication that the board found any facts. And the board's decision is very clear on citing the immigration judge's findings. It listed all of his favorable factors, including the 20-plus years and the general employment and family ties. And it just said that these criminals... What about this issue? So, I understand what you said about the crime being serious, but what about this issue about the inconsistent accounts? And the IJ had said that there was an explanation, and so he was still credible. Was the BIA overturning the factual finding by the IJ in saying that? No, Judge was... The immigration judge himself found that Mr. Cruz gave inconsistent accounts of what happened to the infant, and in the end declined to render an adverse credibility finding, which I'm sure the court knows can be fatal in and of itself to an application for relief based on the Real ID Act. But here the board just recognized that he gave inconsistent accounts, but in the end, he testified that he shook an infant. And that's consistent with the board's duties. It looks to the... When it's weighing a negative factor, such as a conviction, it looks to the conviction, the circumstances surrounding the conviction, the sentence. All that is taken into consideration and how much weight it places. And it didn't overturn in the immigration judge's adverse credibility finding. And the fact... This is just... This is just... The fact, I take it, your argument is that it determined based on the IJ's findings that the crime was more serious rather than less serious is not a factual dispute. That is just a... Some other assessment beyond a factual assessment. Is that right? Right. So the board was not saying it was finding clear error in the judge's factual findings. It's saying that we're looking at those findings and we just view them differently. We think that the adverse factors, these findings outweigh the positives. And that's a purely discretionary weighing of the factors that the court lacks jurisdiction to review. And I see I'm way over my time, so if there's no other questions, we would ask the court to dismiss the petition. Ms. Zubek, am I pronouncing your name correctly? The DZ is pronounced as a J, so it's a Zubek. Zubek. Okay. You've got one minute for the bell. Thank you, your honor. So I want to just clarify the factual record. Mr. Cruz has been in the jail for three years. He entered 1989. He was adjusted to LPR status in 2001. The incident with the child happened in 2011. He was picked up by ICE in 2017 and he was held for over two years, which is far longer than any criminal sentence that would be applicable to the crime of which he was convicted. Secondly, I wanted to turn to this issue of the position of the government, which is that this is all just a matter of discretion for which this court lacks jurisdiction. And we dispute that because it would really be tempting to say that the BIA has discretion to just view the facts differently and determine contrary to the immigration judge. But in this case, the basis for that is the statement that the infant's recovery was fortuitous, suggesting that it was a serious injury and it was just luck that this child recovered quicker and they didn't have to credit the actual medical evidence, which suggested that the nature of the injury was much less severe. So to have the centrality of the adverse factor against canceling removal, be this big of a dispute with the factual record is problematic for us. And we think it's incumbent under the regulations and under this court's guidance for the BIA to provide a much clearer statement as to when they dispute the facts that have been found by the immigration judge, based on a record that in this case was in excess of 900 pages. They need to be much clearer about how they do that and follow the right standard of review. And in this case, we just don't think they Thank you. Thank you very much. The matter is submitted. Thank you both. Thank you for taking this case on. We'll hear argument next.